IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAVID LEE KIDD,**

        **Petitioner,**

v.                                                              **Civil Action No. 5:14cv122**
                                                               **Criminal Action No. 5:11cr17-1**
                                                               **(Judge Stamp)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On September 8, 2014, the *pro se* Petitioner filed a Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside or Correct Sentence by a Person in Federal Custody with an attached 3-page

memorandum in support.[1] By Order entered the same day, the respondent was directed to answer

the petition. A week later, on September 15, 2014, without leave of court, Petitioner filed an

additional 40-page typewritten memorandum in support, along with a Motion for Briefing

Schedule and Extension of Time to file a reply to the government's response. On September 18,

2014, the government moved for an extension of time. By Order entered September 25, 2014,

Petitioner's memorandum in support was stricken from the record and returned to him, and the

order directing the government to respond was vacated. On October 7, 2014, Petitioner refiled

the same 40-page memorandum in support, accompanied by a motion for leave to file excess

pages. By Order entered October 8, 2014, Petitioner's motion was denied in part and granted in

part; he was denied permission to re-file the 40-page memorandum, but was directed that any

further memorandum he might file in its place be limited to 7 pages. On October 23, 2014,

---

[1]Dkt.# 699.

Petitioner filed a 7-page Memorandum of Law and Supplemental Brief. On October 27, 2014, the Government was again directed to answer. On November 3, 2014, Petitioner filed an objection the undersigned's Order denying and granting in part his motion for leave to file excess pages. The Government filed its response on November 12, 2014. By Order entered November 17, 2014, the District Judge overruled Petitioner's objections and affirmed the undersigned's Order denying and granting in part his motion for leave to file excess pages. Petitioner replied to the Government's response to his petition on December 11, 2014.

By Order entered *sua sponte* March 3, 2015, Petitioner's previously imposed sentence of 262 months was reduced to 210 months, pursuant to 18 U.S.C. §3582(c)(2).

This matter is pending before me for review, report and recommendation pursuant to LR PL P 2.

## II. Facts

### A. Conviction and Sentence

On March 28, 2011, following their March 25, 2011 arrest in the State of Florida Petitioner and a co-defendant were named in a criminal complaint alleging that they had conspired to possess with intent to distribute and distribute Schedule II prescription pills, including but not limited to oxycodone. Petitioner was arrested in the Middle District of Florida on March 30, 2011, and was first indicted on April 19, 2011 in a 6-count indictment, naming him in 5 of the 6 counts. After further investigation, on June 11, 2011, a superseding indictment was returned, adding 17 co-defendants and numerous drug trafficking and money laundering counts, and naming Petitioner in 13 counts.

On July 29, 2011, Petitioner was ordered released on pretrial conditions to home confinement at his Martins Ferry, Ohio residence, with the exception of permitted absences granted by his probation officer. However, on October 7, 2011, Petitioner absconded from the jurisdiction, first traveling to New Jersey, where he purchased a car and then fled cross-country. Petitioner was finally arrested on October 20, 2011.[1]

On December 13, 2011, a second superseding indictment was returned against Petitioner, now with 21 co-defendants for their roles in the prescription pill conspiracy. Petitioner was identified as the organizer and leader of the conspiracy and was named in 19 of the 38 counts, alleging his involvement in the conspiracy to distribute Schedule II controlled substances, conspiracy to launder monetary instruments; conspiracy to travel in interstate commerce to further racketeering enterprise; use of a telephone to facilitate the drug activity; distribution; various counts of distribution in aiding and abetting the distribution of oxycodone; and specific acts of money laundering.[2]

On April 24, 2012, Petitioner signed a plea agreement by which he agreed to plead guilty to Counts One and Three of the second superseding indictment, charging him with Conspiracy to Distribute Schedule II Controlled Substances, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C), and Conspiracy to Launder Monetary Instruments, in violation of Title 18, United States Code, Section 1956(h), respectively. Further, he agreed to plead guilty to Count One of an attached Information in Case No. 5:12-CR-14: contempt of court, in violation of Title 18, United States Code, Section 402, for his fleeing the jurisdiction to avoid prosecution,

---

[1] Dkt.# 669 at 42 – 43; Dkt.# 718 at 3.

[2] Dkt.# 364.

and he waived the right to have the contempt charge presented to a Grand Jury. Finally, he agreed to admit to the Forfeiture Allegation in the second superseding indictment.

In the agreement, Petitioner also entered into a conditional waiver of his right to appeal and to collaterally attack his sentence. Specifically, the Petitioner's plea agreement contained the following language regarding his waiver:

> 12. Mr. Kidd is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, if the Court finds that the total advisory guideline is level 38 or less than [sic] the defendant knowingly and voluntarily waives the right to appeal his sentence or the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus), where the sentence is based upon a level 38 or less. In exchange for the defendant's waiver, the United States waives its right to appeal the sentence, at a total offense level of 38. In the even that there would be an appeal however, each party reserves the right to argue in support of the sentence.[3]

(Dkt.# 593, ¶12 at 7).

On May 24, 2012, the Petitioner entered his plea in open court. (Dkt.# 669). Petitioner testified that he could read write and understand the English language. (Id. at 4). He reported that he was 43 years old and graduated high school and earned "about 60 credits of college class." (Id. at 3). He denied having taken any medicine, drugs or alcohol within the preceding 24 hours. (Id.). He denied having ever received treatment for mental illness or addiction to narcotics. (Id. at 3 - 4). He denied having any hearing impairment or other disability that would prevent his full participation in the hearing. (Id. at 4). The Assistant U.S. Attorney ("AUSA") read aloud or summarized the entire plea agreement, including paragraph 12, *supra*, in open

---

[3] Because petitioner's total offense level was ultimately determined to be 39, not a 38 or less, the waiver did not apply and petitioner retained his appellate and collateral attack rights.

court. (<u>Id</u>. at 5 – 13). Petitioner did not object to any part of the plea agreement. (<u>Id</u>. at 14). He testified that he had reviewed the plea agreement in detail with his attorney before signing it. (<u>Id</u>.). The Court specifically asked Petitioner if he understood the waiver of appellate and post-conviction relief rights and Petitioner said that he did. (<u>Id</u>. at 15 – 16 and 21). The Court the asked defense counsel if he believed that Petitioner fully understood the importance of the waiver of his appellate rights and counsel said that he did believe Petitioner understood. (<u>Id</u>. at 16). The Court asked Petitioner if he had been promised anything else that was not contained in the written plea agreement and Petitioner said that he had not. (<u>Id</u>. at 15). The Court then reviewed all the rights Petitioner was giving up by pleading guilty. (<u>Id</u>. at 23 - 26). During the plea hearing, the Government presented the testimony of Robert Manchas, Special Agent with the Drug Enforcement Administration, to establish a factual basis for the plea. (<u>Id</u>. at 29 - 43). Petitioner's counsel declined to cross examine the witness when given the opportunity. (<u>Id</u>. at 48). Petitioner did not object to the witness' characterization of the events. (<u>Id</u>.).

After the Government presented the factual basis of the plea, the Petitioner advised the Court that he was guilty of Counts One and Three of the second superseding indictment and Count One of the Information. (<u>Id</u>. at 44). The Petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (<u>Id</u>.). In addition, he testified that the plea was not the result of any promises or inducements, other than those contained in the plea agreement. (<u>Id</u>.). The Petitioner testified that his attorney had adequately represented him, that there was nothing his attorney did not do that he thought should have been done, and that neither he nor his attorney had found any defense to the charges. (<u>Id</u>. at 45). Finally, Petitioner said that he was in fact guilty of the crimes to which he was

pleading guilty.  (Id.). At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily; that the Petitioner understood the consequences of pleading guilty; that the elements of the crime were established; and that the basis in fact for the guilty pleas had been shown.  (Id. at 45 - 46).  The Petitioner did not object to the Court's finding.

On October 22, 2012, the Petitioner appeared before the Court for sentencing.  (Dkt.# 670). During the sentencing hearing, the Government again presented the testimony of Robert Manchas, Special Agent with the Drug Enforcement Administration, to establish a factual basis for the two-level enhancement pursuant to Guideline 2D1.1(b)(1) for use of a firearm in during a drug offense. (Id. at 5 - 17).  Petitioner's counsel cross examined the witness when given the opportunity.  (Id. at 13 - 17).  Petitioner did not object to the witness' characterization of the events.

The Court then heard argument on Petitioner's objections to the PreSentence Investigation Report ("PSR") and argument on Petitioner's motion for a downward variance below the guidelines. (Id. at 31- 43).  After considering several factors, including the circumstances of the crime; Petitioner's relatively minimal prior criminal history; exemplary military record; his efforts to educate himself; his ironworker work history; work-related injuries that led to the beginning of his substance abuse; personal history and characteristics; and the sentencing objectives of punishment, the Court denied Petitioner's motion for a downward variance.  Petitioner was sentenced to a term of 240 months imprisonment for each of Counts One and Three of the second superseding indictment, with those sentences to run consecutive to each other only to the extent necessary to achieve a total punishment of 262 months, and 6 months as to Count One of the Information (Case No. 5:12-CR-14), to run concurrent to Counts

One and Three in Case No. 5:11-CR-17-01. Upon release from imprisonment, he was sentenced to 3 years supervised release on each of Counts One and Three of the superseding indictment in Case No. 5:11cr17-01, and one year as to Count One of Case No. 5:12cr14, all terms to run concurrently with each other. (Id. at 43 - 47). The Court noted that because his total offense level was found to be 39, Petitioner had retained his rights under the appellate waiver, and advised Petitioner of those rights. (Id. at 50 – 51).

**B. <u>Appeal</u>**

Petitioner timely filed a notice of appeal. On appeal, Petitioner challenged his sentence enhancement for possession of a firearm, contending that the district court clearly erred when it found that he possessed a firearm during a drug offense. By unpublished *per curiam* opinion entered on June 6, 2013, the Fourth Circuit Court of Appeals affirmed the district court's judgment.[4]

**C. <u>Federal Habeas Corpus</u>**

**<u>Petitioner's Contentions</u>**

Petitioner's motion and its initial attached 3-page memorandum in support raises four grounds, reordered here for clarity and brevity, alleging that:

1) an illegal search and seizure, done without his consent, resulted in his arrest;

2) counsel was ineffective prior to the plea, for failing to prepare him and properly inform him, thus causing him to unknowingly and involuntarily waive his right to trial;

3) counsel was ineffective after the entry of the plea, when at sentencing, counsel

      a) failed to preserve the record regarding the description of the firearm in the safe as a semi-automatic, when there was no semi-automatic in the safe or connected to Petitioner;

---

[4] Dkt.# 687.

b) ignoring Petitioner's request to challenge or suppress the inclusion of specific evidence and information obtained pursuant to that evidence;

c) by denying Petitioner the right to testify at sentencing, thus violating his due process rights;

d) by failing to effectively cross-examine the Government witness, which allowed an erroneous 2-point sentencing enhancement to be applied; and

4) Petitioner's due process rights were violated at sentencing when he was denied the right to face his accusers and cross examine those who alleged that he was in charge of certain aspects of the criminal conspiracy.

In his later-filed second 7-page memorandum in support, Petitioner raises four more claims:

5) counsel failed to investigate his co-defendants and the officers involved in his initial arrest;

6) counsel failed to retain an expert witness to testify about the firearm;

7) counsel failed to cross-examine witnesses whose statements were used to establish drug weight; and

8) counsel failed to object to the inclusion of a 2-level enhancement for the Contempt charge.

As relief, Petitioner seeks to be resentenced to a sentence that corresponds to his actual criminal culpability; seeks an evidentiary hearing to fully explore the claims presented; and requests that the court make a finding of *in forma pauperis* on his behalf.

**Government's Response**

The Government contends that the motion to vacate should be dismissed because

1) Petitioner's claims regarding his two-level sentencing enhancement for possession of a firearm during a drug offense are procedurally barred by the mandate rule, having already been raised on appeal;

2) Petitioner waived the right to challenge the sufficiency of the evidence when he entered his plea;

3) Petitioner's sworn statements at his Rule 11 hearing demonstrate that his plea was knowing and intelligent;

4) Petitioner's claimed due process violations incident to being denied the right to testify at his sentencing hearing must fail, because they are refuted by the record; and

5) Petitioner's claims of counsel's ineffectiveness are refuted by the record.

**Petitioner's Reply**

Petitioner reiterates his arguments and attempts to refute the Government's on the same. He argues that the Government's failure to specifically address his illegal search and seizure claim waives the Government's defense to it. Therefore, he contends that the Government has conceded the claim.

### III. <u>Standard of Review</u>

A. <u>**Petitioner's Burden of Proof**</u>

"A Petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a Petitioner's sentence brought pursuant to §2255 requires the Petitioner to establish his grounds by a preponderance of the evidence. <u>Jacobs v. United States</u>, 350 F.2d 571, 574 (4th Cir. 1965); <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006); <u>Hall v. United States</u>, 30 F.Supp.2d 883, 889 (E.D. Va. 1998).

The Court may decide a §2255 Motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28

U.S.C. §2255; see United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988); Zhan Gao v. United States, 375 F.Supp.2d 456, 459 n.1 (E.D. Va. 2005).

## IV. <u>Analysis</u>

### A. <u>Barred Claims</u>

Before evaluating the merits of Petitioner's claims, the Court must determine which of his issues he may bring in his §2255 motion and which are barred either because they are not appropriately raised in a §2255 motion or because Petitioner's failure to raise them on direct appeal is not excused.

It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). See also Herman v. United States, 227 F.2d 332 (4th Cir. 1955). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a §2255 motion so long as the Petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

Here, Petitioner's Ground One Fourth Amendment claim that a warrantless, illegal search and seizure, done without his consent, resulted in his arrest, is a constitutional error that should have been raised on direct appeal. Petitioner may not raise now raise it in his §2255 motion

because he has not even attempted to demonstrate "cause" to excuse his procedural default, nor does his conclusory claim that the "fruit of the poisonous tree" should have been suppressed suffice to show actual prejudice resulting from the alleged error. <u>Maybeck</u>, 23 F.3d at 891. Further, his Ground 2(d) claim that counsel was ineffective at sentencing, for failing to effectively cross-examine the Government witness, thereby permitting an "erroneous" 2-point sentencing enhancement pursuant to Guideline 2D1.1(b)(1) for use of a firearm in during a drug offense, has already been raised and rejected on appeal, albeit as a "straight up" claim that the district court clearly erred when it found that he possessed a firearm during a drug offense. Therefore, Petitioner's attempt to now couch the same claim as one of ineffective assistance must fail. <u>Boeckenhaupt v. United States</u>, 537 F.2d at 1183; <u>see also</u> <u>United States v. Bell</u>, 5 F.3d at 66 (holding that the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court.").

**B. <u>Petitioner's Ineffective Assistance of Counsel Claims</u>**

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the Petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the Petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. <u>Fields v. Att'y Gen'l. of Md</u>., 956 F.2d 1290, 1297 (4th Cir. 1992).

In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).  Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed.  <u>Strickland</u>, *supra* at 691.

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985).  In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u> at 59 (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." <u>Fields</u>, supra at 1297.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance.  <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what constitutes reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**<u>Ground One</u>: Whether counsel was ineffective for failing to prepare and properly inform Petitioner regarding the entry of his plea, thereby causing him to unknowingly and involuntarily waive his right to trial.**

Petitioner contends that counsel was deficient for inadequately preparing and advising him during plea agreement proceedings, thereby causing him to unknowingly and involuntarily waive his right to trial. In his reply to the Government's response, noting Petitioner's affirmative responses under oath during the Rule 11 hearing, attesting to his understanding of what he was undertaking, Petitioner revises this claim. While admitting that he did respond "in the affirmative that he understood the plea agreement" at the plea hearing, he now contends that "since Kidd was not sentenced on a base level of 38 or less, then clearly all waivers, which were contingent upon actions by all parties involved, is irrelevant [sic] as all the aspects were not met."[5]

A guilty plea diminishes the scope of potential claims available under 2255. "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004). The "guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258 (1973). Thus, the defendant who has pled guilty "has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea," Bundy, 392 F.3d at 644-45, or the government's "power to bring any indictment at all," United States v. Broce, 488 U.S. 563, 575 (1989); see United States v. Bluso, 519 F.2d 473, *4 (4th Cir. 1975) ("A guilty plea is normally understood as a lid on the box, whatever is in it, not a platform from which to explore further possibilities."); see also Blackledge v. Perry, 417 U.S. 21, 29-30 (1974) ("[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Rather, a person complaining of such antecedent constitutional violations is limited . . . to attacks on the voluntary and intelligent nature of the guilty plea, through proof

---

[5] Dkt.# 723 at 5 – 6.

that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." (internal quotation marks and citations omitted)).

A guilty plea must be a voluntary and intelligent decision of the defendant. <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969); <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970). If the defendant does not understand his constitutional protections and the charges made against him, the guilty plea is invalid. <u>Henderson v. Morgan</u>, 426 U.S. 637, 645 (1976). "[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea.'" <u>Cuthrell v. Director, Patuxent Inst.</u>, 475 F.2d 1364, 1365 (4th Cir.), <u>cert. denied</u>, 414 U.S. 1005 (1973) (<u>quoting</u> <u>Wade v. Coiner</u>, 468 F.2d 1059, 1060 (4th Cir.1972)), including the length of the maximum sentence or any mandatory minimum sentence which may be imposed. <u>Manley v. United States</u>, 588 F.2d 79, 81 (4th Cir. 1978).

A defendant's statement that his plea is voluntary and knowing is generally considered conclusive on these issues. <u>Savino v. Murray</u>, 82 F.3d 593, 603 (4th Cir. 1996). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." <u>Fields v. Attorney Gen. of Maryland</u>, 956 F.2d 1290, 1299 (4th Cir. 1992), <u>cert. denied</u>, 506 U.S. 885 (1992). A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement. <u>United States v. DeFusco</u>, 949 F.2d 114, 119 (4th Cir. 1991), <u>cert. denied</u>, 503 U.S. 997 (1992). Moreover, "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea. <u>United States v. Lambey</u>, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977)).

Here, Petitioner's contention that counsel's ineffectiveness rendered his plea unknowing and unintelligent is clearly refuted by the record. Petitioner signed each and every page of his plea agreement, in order to obtain the plea agreement's reciprocal benefits: dismissal of the remaining 17 counts.[6] Subsequently, during the change of plea hearing, Petitioner specifically testified under oath that he understood and agreed with all the terms and provisions of the plea agreement, and had reviewed the plea agreement in detail with counsel before signing it.[7] Further, this exchange was had:

> THE COURT: Mr. Kidd, do you understand this Court's not bound by any recommendation or stipulation contained in the plea agreement, and that if I find later on, based upon an independent investigation by the probation officer or any other evidence, that I cannot go along with a recommendation or stipulation, that you'd still be bound by your plea agreement and will not have a right later on to withdraw it; do you understand that?
>
> MR. KIDD: Yes, sir.

Dkt.# 669 at 14 – 15.

Petitioner testified that he could read, write, and understand the English language (Dkt.# 669 at 4) and had earned "about 60 credits" of college; (Id. at 3). He denied having taken any medicine, drugs or alcohol within the previous 24 hours (Id.); denied ever having received treatment for mental illness or drug addiction (Id. at 3 – 4); and denied having any hearing impairment or other disability that would prevent his full participation in the hearing. (Id. at 4). The Court reviewed all the rights Petitioner was foregoing by the entry of his plea, including the right to maintain his guilty plea throughout all stages of the proceedings, including trial, and Petitioner testified that he understood. (Id. at 20 – 22). When asked if he understood that if he chose to go to trial, he could confront the witnesses that came in to testify against him; his

---

[6] Dkt.# 593.

[7] Dkt.# 669 at 14.

counsel could cross-examine those witnesses; and he could also move to suppress any evidence that he felt had been properly obtained against him, Petitioner testified that he understood. (Id. at 24). When asked if he understood that if he went to trial, he had a constitutional right not to testify or to in any other way incriminate himself, and that his exercise of that right could not be used against him; Petitioner testified that he understood. (Id.). He testified that he understood that if he chose to go to trial, he could make the government prove all the charges against him beyond a reasonable doubt; that the verdict of the 12-member jury would have to be unanimous; and that he would be able to present evidence on his own behalf, and his counsel could ask the clerk to subpoena witnesses to come to court and testify for him. (Id. 24 – 25). Finally, he testified that he understood that if he entered a guilty plea to the charges, there would be no trial, no jury verdict as to the charges against him, nor any findings of either innocence or guilt based upon disputed evidence presented either to a court or to a jury. (Id. at 25).

Petitioner stated under oath that he understood the nature of the charges against him, the possible sentences, and the consequences of his plea. He confirmed that he was not forced, coerced or threatened to take the plea, and that his plea was freely and knowingly given. (Id. at 44). He testified that he was satisfied with his attorney's representation; that he did not feel that his attorney neglected to do anything he should have done; and that neither he nor his attorney had found any defense to the charges against him. (Id. at 45). Finally, Petitioner said that he was in fact guilty of the crimes to which he was pleading guilty. (Id.) At the conclusion of the hearing, the District Judge found that Petitioner's plea was made freely and voluntarily, that Petitioner was competent to make a guilty plea, and that he had full knowledge and

understanding of the consequences of the plea, and that there was a basis in fact for the plea. (Id. at 45 – 46).

Although the Petitioner now claims counsel failed to adequately represent him by inadequately preparing him for the plea, the record does not support such a claim. "Absent clear and convincing evidence to the contrary, [he] is bound by the representations he ma[de] under oath during [his] plea colloquy." Fields, *supra* at 1299. Accordingly, the undersigned finds that Petitioner knowingly and intelligently entered a plea of guilty and knowingly and intelligently waived his right to go to trial, incident to the entry of his plea. Further, the undersigned further finds that Petitioner has neither proven ineffectiveness nor prejudice, thus he has failed to carry his burden under Strickland.

Finally, as for Petitioner's reply claim that because he was not sentenced on a base level of 38 or less, then all waivers in the plea agreement "that were contingent upon actions by all parties involved should be irrelevant" because "all the aspects were not met,"[8] the undersigned notes that at the Rule 11 hearing, Petitioner also acknowledged his understanding that even if the court later learned that it could not go along with a recommendation or stipulation contained in the plea agreement, that Petitioner would still be bound by the agreement and would not have a right later on to withdraw it. (Dkt.# 669 at 14).

**Ground Three (a), (b), (c) and (d):** **Whether counsel was ineffective at sentencing for failing to preserve the record regarding the description of the firearm found in the safe; for ignoring Petitioner's request to challenge or suppress the inclusion of specific evidence and/or information obtained pursuant to that evidence; by denying Petitioner the right to testify; and by failing to effectively cross-examine the Government witness to prevent application of the two-level enhancement.**

Petitioner contends that counsel was ineffective for failing to object and preserve the record regarding a semi-automatic found in his safe "when there was no semi-autmatic [sic]

---

[8] Dkt.# 723 at 5 – 6.

recovered from my safe or ever connected to me. I repeatedly explained to counsel that the only firearm that could have possibly been found in the safe was a non-working, late 1800's classic six shot revolver." (Dkt.# 699-1 at 1). The Government contends that it is apparent from the record that counsel was not ineffective, and that all Petitioner's allegations regarding counsel's performance are "facially inaccurate."

In his reply, Petitioner again stresses counsel's "complete inability to object to the perjured statements" made by the government witness, arguing that no .32 caliber Harrison & Richards semi-automatic was ever found in the safe; such a finding was never disclosed to the defense nor was it mentioned before sentencing; the witness' statements regarding it are "completely fictitious;" and therefore, the two-level enhancement is "unreasonable." Finally, Alternatively, Petitioner argues that if the government witness did not perjure himself "then the Government has withheld a major piece of evidence from the defense" and as such, has committed a <u>Brady</u>[9] violation.

A review of the record reveals that prior to sentencing, Petitioner's counsel entered a number of objections to the PSR. Objection No. 2 was to the two-level enhancement pursuant to Guideline 2D1.1(b)(1) for use of a firearm in during a drug offense.[10] At sentencing, the same government witness who testified at the Rule 11 hearing testified again, this time, to provide a factual basis regarding the firearm, a loaded, functional, .32 caliber Harrison and Richards semi-automatic pistol, found in the safe in Petitioner's house, along with the drugs, money, "owe

---

[9] <u>Brady v. Maryland</u>, 373 U.S. 83 (1973).

[10] Dkt.# 649 at 37.

sheets," and MRI reports on CDs,[11] in support of the two-level enhancement pursuant to Guideline 2D1.1(b)(1) for use of a firearm in during a drug offense. (Dkt.# 670 at 5 – 17). Petitioner's counsel vigorously cross examined the witness. (Id. at 13 – 17). Counsel noted his objection to the two-level enhancement, arguing that it was "clearly improbable" that the gun was connected to the crime; that others may have had access to the safe; and that there was no evidence presented as to how long the gun had been there; how recently it had been fired; or whether it could even fire. (Id. at 17 – 20). After the Government presented its argument in support of the enhancement, the Court ruled in favor of it. (Id. at 20 – 23).

Before pronouncing Petitioner's sentence, the Court advised him that "the Federal Rules of Criminal Procedure give you both the opportunity and the right to make a statement to the Court, either in mitigation of sentence *or in explanation of any of these matters*." Dkt.# 670 at 28 (emphasis added). Petitioner stood and read from a prepared statement, apologizing to his family and the community; citing to his military service; his former status as a productive member of society; accepting responsibility for his actions; and pleading for leniency in sentencing. (Dkt.# 670 at 29 – 30). He did not dispute or challenge the government witness' testimony about the firearm found in the safe in any way.

The undersigned finds that the record clearly refutes Petitioner's claims that counsel did not object and therefore failed to "preserve the record" regarding the semiautomatic found in the safe, or that counsel failed to cross-examine the witness on the point. Moreover, it is clear that when Petitioner had the opportunity to make a statement to the court to explain anything he disputed, he did not avail himself of the opportunity to challenge the testimony regarding the

---

[11] The MRI records on CD were used by the petitioner and his co-defendant "doctor shoppers," to use in gaining admittance to physicians at pain clinics in Florida, who refused to see patients who had not first had an MRI. Dkt.# 670 at 11.

same.  Because Petitioner has neither proven ineffectiveness nor prejudice, he has again failed to carry his burden under Strickland.

Likewise, as for Petitioner's related claim, that counsel was ineffective at sentencing for ignoring Petitioner's request to challenge or suppress the inclusion of specific evidence and/or information obtained pursuant to that evidence, nowhere in his petition or reply has Petitioner identified what that "specific evidence" was, let alone how challenging or suppressing it would have affected the outcome of his representation.  The undersigned can only speculate. Habeas petitions must meet heightened pleading requirements.  McFarland v. Scott, 512 U.S. 849, 856 (1994). "In order to obtain an evidentiary hearing on an ineffective assistance claim – or, for that matter, on any claim – a habeas Petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas Petitioner to an evidentiary hearing." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999).  This claim is insufficiently pled and should be dismissed.

Finally, Petitioner's claim that counsel denied him the right to testify at his sentencing hearing is refuted by the record and has no merit.

**Ground 4, 5, 6, 7, and 8: Whether Petitioner's due process rights were violated at sentencing when he was denied the right to face his accusers and cross examine those who alleged that he was in charge of certain aspects of the criminal conspiracy; and whether counsel was ineffective for failing to investigate Petitioner's co-defendants and the officers involved in his initial arrest; failing to retain an expert witness to testify about the firearm; failing to cross-examine witnesses whose statements were used to establish drug weight; and for failing to object to the inclusion of a 2-level enhancement for the Contempt charge.**

These claims have no merit.  As noted *supra* in Ground One, Petitioner was clearly advised and chose to waive his right to face his accusers; cross examine them; conduct further

investigation; retain witnesses to support his claims; and challenge the evidence, incident to the entry of his plea at the Rule 11 hearing. Having already obtained the benefits of that plea agreement by the dismissal of 17 other serious charges, Petitioner now seeks to "have his cake and eat it too." These claims should be dismissed.

Likewise, as for Petitioner's claim that counsel was ineffective for not objecting to the inclusion of a 2-level enhancement for the Contempt charge, that enhancement was earned by Petitioner when he absconded from the jurisdiction to avoid prosecution. Moreover, Petitioner stipulated and agreed to the 2-level enhancement in his plea agreement, in return for the Government's agreeing to recommend a reduction for acceptance of responsibility, even in the face of Petitioner's flight. (Dkt.# 593, ¶11 at 6). Counsel cannot be found deficient for not objecting when there was no grounds to do so. "Counsel is not required to waste the court's time pursuing frivolous legal motions." <u>Wheeler v. United States</u>, 2011 WL 2491376, at *15 (N.D. W.Va. Apr. 25, 2011) (citing <u>United States v. Bosch</u>, 584 F.2d 1113, 1121 (1st Cir. 1978)).

Accordingly, this claim, like the rest of Petitioner's claims, has no merit and should be dismissed.

## V. <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends that Petitioner's §2255 motion (Dkt.# 699) be **DENIED and dismissed with prejudice** from the docket.

Further, the undersigned recommends that Petitioner's pending Motion for Briefing Schedule and Extension of Time (Dkt.# 704) and the government's pending Motion for Extension of Time to Respond (Dkt.# 708) be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by September 22, 2015,** any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge**. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.** 28 U.S.C. §636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985): <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy to all counsel of record electronically.

DATED: September 8, 2015

 /s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE